IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 6, 2004 Session

**STATE OF TENNESSEE v. CHARLES SAWYER**

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Marshall County**
**No. 14856      William C. Lee, Judge**

---

**No. M2002-01062-SC-R11-CO - Filed February 25, 2005**

---

The defendant, Charles Sawyer, was arrested by the police for aggravated sexual battery. Following his arrest, Sawyer made an oral statement to the police after an officer read to Sawyer an affidavit supporting the arrest warrant but before the officer advised Sawyer of his Fifth Amendment rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Sawyer filed a motion to suppress his oral statement. Based upon the nature of the facts contained in the affidavit supporting the issuance of the arrest warrant and the circumstances surrounding his arrest and detention, we conclude the statement resulted from an unconstitutional custodial interrogation and therefore should be suppressed. Accordingly, we affirm the judgment of the Court of Criminal Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals**
**Affirmed; Remanded to the Trial Court**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and WILLIAM M. BARKER, JJ., and ALLEN W. WALLACE, SP.J. joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth T. Ryan, Senior Counsel; Mike McCowen, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellant, State of Tennessee.

F. Shayne Brasfield, Franklin, Tennessee, and Michael Eugene Gilmer, Columbia, Tennessee, for the appellee, Charles Sawyer.

**OPINION**

**BACKGROUND**

On October 25, 2001, Detective Kevin Clark and Chief Deputy Billy Lamb of the Marshall County Sheriff's Department obtained an arrest warrant for the defendant, Charles Sawyer, for aggravated sexual battery. The two Marshall County officers and a Maury County officer traveled

to Sawyer's residence in Maury County, Tennessee. Detective Clark informed Sawyer of the charge and arrested him. Detective Clark told Sawyer that they "would go down to the jail, and [they] would discuss what was going on."

Detective Clark and Chief Deputy Lamb handcuffed Sawyer, placed him in the back seat of a patrol car, and transported him to the Marshall County jail. Other than merely informing Sawyer of the charge, the officers did not discuss the charge with Sawyer, nor did they advise him of his Fifth Amendment rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).

Immediately upon arriving at the jail, Sawyer was escorted to Detective Clark's office where Detective Clark intended to conduct an interview. The officers removed Sawyer's handcuffs and seated him facing Detective Clark, who sat behind a desk. Detective Clark read the arrest warrant and the affidavit of complaint to Sawyer.[1] The arrest warrant stated only that Sawyer was charged with aggravated sexual battery. The affidavit of complaint stated that "on or about July 27th 2001 Charles Sawyer did rub the leg and vaginal area of [the alleged victim], who is 12 years of age. This incident occurred at 1489 Bridle [L]ane in Chapel Hill. This did occur in Marshall County Tennessee."

Detective Clark testified that after he read the affidavit but before he advised Sawyer of his rights, Sawyer stated, "I admit to rubbing her leg, but I didn't do the other. And I admit to rubbing the other girl's hair." Sawyer made the statement approximately thirty minutes after his arrest.[2] Detective Clark then advised Sawyer of his Fifth Amendment rights, and Sawyer requested counsel. Detective Clark escorted Sawyer to be booked.

Detective Clark testified that he read the warrant and affidavit to Sawyer pursuant to standard procedure "[t]o let [Sawyer] know exactly what the charges were and [the identity of] the victim." The detective denied reading the affidavit of complaint for purposes of eliciting a statement from Sawyer. Sawyer testified he had been arrested approximately four years prior to the present case and was aware of his rights, including his right to remain silent.

The trial court granted Sawyer's motion to suppress, finding that Sawyer's statement resulted from an impermissible custodial interrogation. The trial court found that: 1) Sawyer made the statement while in custody at the jail thirty minutes following his arrest and that the statement was not a "spontaneous" response to his arrest; 2) Sawyer made the statement after being advised of the details of the allegations contained in the affidavit, not after he was read the general charge; and 3) the officer's actions in reading the affidavit were "the functional equivalent of interrogation" as "it

---

[1] Sawyer testified the officers read the warrant and affidavit to him a total of three times: once while at Sawyer's residence, once while en route to the sheriff's department, and once while inside the detective's office. The trial court found that the officer read the warrant and affidavit to Sawyer on only one occasion, while inside the detective's office.

[2] At the suppression hearing, Sawyer denied making the statement. The trial court declined to determine whether Sawyer made the statement, concluding that the jury should decide this issue if the statement is admissible at trial.

would be reasonable to expect a response" under these circumstances even though the officers did not deliberately seek to elicit a response from Sawyer.

The State filed an interlocutory appeal to the Court of Criminal Appeals pursuant to Tennessee Rule of Appellate Procedure 9. The Court of Criminal Appeals granted the appeal and affirmed the trial court's judgment suppressing the defendant's statement. We granted review.

## ANALYSIS

The findings of fact made by the trial court at a hearing on a motion to suppress are binding upon an appellate court unless the evidence contained in the record preponderates against those findings. State v. Saylor, 117 S.W.3d 239, 244 (Tenn. 2003). As trier of fact, the trial court has the ability to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). As the prevailing party, the defendant is entitled to the strongest legitimate view of the evidence as well as to all reasonable inferences drawn from that evidence. State v. Damron, 151 S.W.3d 510, 515 (Tenn. 2004); State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, we review the trial court's conclusions of law de novo. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000).

The issues in this case concern the federal and state constitutional protections against compelled self-incrimination. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). The Self-Incrimination Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." See Malloy v. Hogan, 378 U.S. 1, 6 (1964) (concluding that the Self-Incrimination Clause is applicable to the states). Article I, section nine of the Tennessee Constitution provides that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." We have held that "the test of voluntariness for confessions under Article I, [section] 9 is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." Walton, 41 S.W.3d at 82 (citation omitted).

In Miranda, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444. These procedural safeguards require that the police advise a defendant being questioned while in custody

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Id. at 479; see State v. Bush, 942 S.W.2d 489, 499 (Tenn. 1997).

An officer must provide Miranda warnings to an accused when the accused is in custody and is subjected to interrogation or its functional equivalent. See Rhode Island v. Innis, 446 U.S. 291, 298 (1980). In the present case, Sawyer was in custody when the officers placed him under formal arrest. See Stansbury v. California, 511 U.S. 318, 322 (1994); State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996). We must therefore determine whether the police officers subjected Sawyer to interrogation or its functional equivalent by reading the affidavit of complaint to him.

Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301. Interrogation also includes any "practice that the police should know is likely to evoke an incriminating response from a suspect." Id. The definition of interrogation focuses primarily upon the accused's perception rather than on the police officer's intent. Id. at 301. However, the officer's intent may be relevant to determine whether the officer should have known his or her words or actions were reasonably likely to invoke an incriminating response. Id. at 301 n.7.

Whether the reading of the affidavit of complaint to an accused is the functional equivalent of interrogation is an issue of first impression in this Court. Some jurisdictions have held that an officer's statement advising an accused of the specific charges is not the functional equivalent of interrogation. See e.g., Enoch v. Gramley, 70 F.3d 1490, 1499-1500 (7th Cir. 1995) (officer advised the defendant that he was charged with murder and identified the victim); People v. Celestine, 12 Cal. Rptr. 2d 179, 181 (Cal. Ct. App. 1992) (officer informed the defendant that he was under arrest for "possession of rock cocaine for sale"); United States v. Brown, 737 A.2d 1016, 1021 (D.C. 1999) (officer told the defendant that he was charged with murder and identified the victim); People v. Parker, 801 N.E.2d 162, 167 (Ill. App. Ct. 2003) (officer read arrest warrant to the defendant); Commonwealth v. Lark, 477 A.2d 857, 861 (Pa. 1984) (officer advised the defendant of his rights and the charges); Gates v. Commonwealth, 516 S.E.2d 731, 733 (Va. Ct. App. 1999) (officer read arrest warrant to the defendant). Had the officers in this case read only the warrant to the defendant, we would agree.

However, the facts and circumstances in this case go beyond merely reading the arrest warrant or otherwise informing the defendant of the charge. See Commonwealth v. DeJesus, 787 A.2d 394, 403 (Pa. 2001) (holding that although informing a defendant of the basis of the charge and the statements of the witnesses was "informational," the officer's actions amounted to the functional equivalent of interrogation). While at Sawyer's residence, Detective Clark informed Sawyer of the charge, arrested him, and stated they "would go down to the jail, and [they] would discuss what was going on." The officers transported Sawyer from his residence directly to Detective Clark's office inside the Marshall County Sheriff's Department. Sawyer was placed in a chair in front of a desk, and Detective Clark sat directly across from Sawyer. Approximately thirty minutes following the arrest, Detective Clark read Sawyer the arrest warrant charging him with aggravated sexual battery and the affidavit of complaint alleging that he had rubbed the leg and vaginal area of the twelve-year-old victim. Detective Clark had not advised Sawyer of his Miranda rights prior to reading the affidavit. Sawyer made the statement only after hearing the detailed allegations contained in the affidavit.

The detective's actions placed Sawyer in an environment in which he could reasonably believe that he was to be interrogated. See Hill v. United States, 858 A.2d 435, 443-47 (D.C. 2004) (informing a defendant who is handcuffed in an interview room that he is charged with second degree murder and that his accomplice has given a statement is the functional equivalent of interrogation). Moreover, although Sawyer had been arrested and advised of his rights on a prior occasion, the detective's actions under the facts and circumstances of this case were "likely to evoke an incriminating response." Innis, 446 U.S. at 301; see also United States v. Wiseman, 158 F. Supp. 2d 1242, 1252-53 (D. Kan. 2001) (holding that the defendant's statements resulted from custodial interrogation even though the defendant had been advised of his rights on prior occasions); Jones v. State, 119 S.W.3d 766, 774 n.13 (Tex. Crim. App. 2003). Sawyer could have reasonably believed that the detective had begun interrogating him and that the detective's reading of the affidavit was a statement requiring a response. Although Detective Clark testified he did not read the affidavit for purposes of eliciting a statement from Sawyer, the detective stated he escorted Sawyer to his office, intending to conduct an interview. "The disclosure of incriminating evidence to a suspect . . . does not necessarily constitute interrogation within the meaning of Innis." State v. Maraschiello, 88 S.W.3d 586, 603 (Tenn. Crim. App. 2000) (holding that the defendant voluntarily confessed to murder upon being advised of his Miranda rights on two occasions and observing officers as they investigated his case and gathered evidence). However, we conclude that under the facts and circumstances of the present case, the detective's action in reading the affidavit to Sawyer was the functional equivalent of interrogation.

## CONCLUSION

We hold that under the facts and circumstances of this case, Sawyer's statement was made as the result of the detective's reading of the arrest warrant and the affidavit to Sawyer, which was the functional equivalent of interrogation. Therefore, we conclude that Sawyer's statement to the detective should be suppressed. Accordingly, we affirm the Court of Criminal Appeals' judgment suppressing the statement and remand to the trial court for further proceedings consistent with this opinion.

Costs of appeal are taxed to the appellant, State of Tennessee.

_____
JANICE M. HOLDER, JUSTICE