IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2006

## STATE OF TENNESSEE v. RANDY C. WHITE

**Appeal from the Circuit Court for Hardin County**
**No. 8410     C. Creed McGinley, Judge**

---

**No. W2005-01794-CCA-R9-CD  - Filed May 4, 2006**

---

The State appeals the suppression of evidence by the Hardin County Circuit Court. Following his arrest for driving while intoxicated, the Defendant, Randy C. White, stated to the arresting officer that he was the driver of the vehicle. The trial court found that the statement was obtained in violation of *Miranda v. Arizona*. After review we conclude that, although the statement was made while White was in custody, it was not made in response to police interrogation. Thus, *Miranda* warnings were not required. Accordingly, we reverse the trial court's suppression of the statement and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Richard W. DeBerry, Assistant District Public Defender, Camden, Tennessee, for the Appellee, Randy C. White.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; Robert "Gus" Radford, District Attorney General; and John W. Overton, Assistant District Attorney General, for the Appellant, State of Tennessee.

**OPINION**

**Factual Background**

Shortly after midnight on September 19, 2004, Officer Dicus of the Hardin County Sheriff's Department received a radio dispatch to be on the lookout for a red Ford Escort which had been observed driving in a reckless manner. Dicus proceeded to the parking lot of the Hunt-N-Fish, the last place the car had been seen. Upon arrival, Dicus approached the vehicle, which was parked, and found the Defendant in the driver's seat and a female in the passenger seat. Pursuant to Dicus' request, the Defendant stepped from the car, where Dicus observed that the Defendant had bloodshot

eyes and extremely slurred speech. The Defendant informed Dicus that he and the female had been at the Hitching Post and that he was intoxicated. During this period, Dicus questioned both the Defendant and the female passenger as to who was driving the Escort. Both denied having driven the vehicle.

The Defendant was arrested and placed in the patrol car for transport to the local jail. Another patrol car was called to transport the female passenger to the jail. No *Miranda* warnings were administered to the Defendant. During the drive, Dicus did not speak with the Defendant or question him any further.[1] En route to jail, however, the Defendant volunteered: "Let her go. I was driving."

On November 22, 2004, a Hardin County grand jury returned an indictment against the Defendant charging him with DUI, fourth offense. Additionally, the Defendant was indicted for violation of the Motor Vehicle Habitual Offender Act. *See* T.C.A. § 55-10-616(a) (2003). On December 9, 2004, the Defendant filed a motion to suppress statements made by him to the police. Following a suppression hearing, the trial court agreed that the Defendant's statement, "Let her go. I was driving[,]" should be suppressed. In granting the Defendant's motion, the trial court found that the statement was obtained in violation of *Miranda v. Arizona,* as the Defendant was in custody at the time the statement was made and no rights had been provided to him. Following the trial court's ruling, the State sought permission to appeal pursuant to Rule 9, Tennessee Rules of Appellate Procedure. That appeal is now before us.

## Analysis

In reviewing a trial court's decision on a motion to suppress, this court looks to the facts adduced at the suppression hearing which are most favorable to the prevailing party. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). In considering the evidence presented at the hearing, this court extends great deference to the fact-finding of the suppression hearing judge with respect to weighing credibility, determining facts, and resolving conflicts in the evidence. *Id.; see also State v. Walton,* 41 S.W.3d 75, 81 (Tenn. 2001).

---

[1] At the suppression hearing, the following colloquy occurred between the prosecutor and the Defendant:

> Q    And you agree that [Dicus] didn't ask you any questions from the time y'all left out there in the squad car from Hunt-N-Fish till the time you got down to the jail?
>
> A    Yes, sir.
>
> Q    Is that correct? He didn't ask you anything?
>
> A     Uh-uh. Well, at the parking lot, he asked me - - I think he asked me where we'd been.

Indeed, these findings will be upheld unless the evidence preponderates otherwise. *Daniel*, 12 S.W.3d at 423. Although deference is given to the trial court's findings of fact, this court conducts its own appraisal of the constitutional questions presented by reviewing the law and applying it to the specific facts of the particular case. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998) (citing *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

On appeal, the State argues that the trial court erred in suppressing the statement because it was a voluntary statement not made in response to police interrogation. The Defendant, although admitting that Officer Dicus did not question him while he was in the patrol car, contends that the statement was made in response to an ongoing interrogation by the officer, which had begun in the parking lot prior to his arrest. The trial court, in granting suppression of the statement, found:

> Despite the fact that [the Defendant] has got a long history and probably does know his Miranda rights, he had not been Mirandized.
>
> I'm going to suppress the use of this statement in the case - - the State's case in chief. However, it's clearly voluntary, so it can be used should he say something contrary to that.

The issue in this case involves the constitutional protection against self-incrimination, which is protected by both the federal and state constitutions. *State v. Blackstock*, 19 S.W.3d 200, 207 (Tenn. 2000). The Self-Incrimination Clause of the Fifth Amendment to the United States Constitution, made applicable to the states by *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 1492 (1964), provides that "no person . . . shall be compelled in any criminal case to be a witness against himself."

To help insure the protections of the Fifth Amendment in the criminal process, the United States Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966), that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Any statement made during custodial interrogation without the benefit of *Miranda* warnings is inadmissible in court. *Dickerson v. United States*, 530 U.S. 428, 432, 120 S. Ct. 2326, 2329-30 (2000).

The requirements of *Miranda* "must be strictly enforced, but only in those situations in which the concerns that motivated the decision are implicated." *State v. Goss*, 995 S.W.2d 617, 629 (Tenn. Crim. App. 1998) (citing *Illinois v. Perkins*, 496 U.S. 292, 296, 110 S. Ct. 2394, 2397 (1990)). The warnings are not required under every circumstance in which police officers come into contact with citizens. Rather, because "the underpinnings of *Miranda* are to dissipate the compulsion inherent in custodial interrogations, to prevent coerced self-incrimination, and to prevent relevant defendant ignorance," *State v. Callahan*, 979 S.W.2d 577, 582 (Tenn. 1998), the requirements of *Miranda* come into play only when the defendant is in custody and is subjected to questioning or its functional

equivalent, *Rhode Island v. Innis*, 446 U.S. 291, 100 S. Ct. 1682 (1980). Absent either of these prerequisites, the requirements of *Miranda* are not implicated.

With regard to the issue of custody, the *Miranda* Court defined this requirement as when the defendant is placed under formal arrest or is "otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S. Ct. at 1612; *see also Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1529 (1994) ("The ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."). Our supreme court has expanded that definition to mean "under the totality of the circumstances, [whether] a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." *State v. Anderson*, 937 S.W.2d 851, 855 (Tenn. 1996). In this case, as even the State concedes, it is clear that the Defendant was "in custody" for *Miranda* purposes. He was under formal arrest and confined in the backseat of a patrol car being transported to jail.

However, in order for the doctrine of *Miranda* to apply, we must also find that the Defendant was subject to interrogation while he was in custody. Although the *Miranda* court defined interrogation as "questioning initiated by law enforcement officers," 384 U.S. at 444, 86 S. Ct. at 1612, the Supreme Court has since made clear that interrogation is not limited to express questioning by officers. In *Innis*, 446 U.S. at 301, 100 S. Ct. at 1689, the Court stated that interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit incriminating information." Included within this definition is any "practice that the police should know is likely to evoke an incriminating response from a suspect." *Id.* However, "where a defendant makes a statement without being questioned or pressured by a government agent, the statement is admissible, if the statement was freely and voluntarily made by the defendant." *State v. Land*, 34 S.W.3d 516, 525 (Tenn. Crim. App. 2000) (citations omitted).

The Defendant cites *State v. Sawyer*, 156 S.W.3d 531 (Tenn. 2005), as support for his position. Specifically, he asserts that "the officer's actions of putting the defendant in custody and by telling the defendant what action he was going to take toward the defendant" amounted to the interrogation referred to in *Sawyer*. We disagree. In *Sawyer*, an aggravated sexual battery case, the defendant was handcuffed and taken into a detective's office where he was read the detailed allegations in the affidavit in support of the arrest warrant. *Id.* at 535. Sawyer responded by admitting to rubbing the victim's leg but denied vaginal contact as alleged in the affidavit. *Id.* Our supreme court upheld suppression of the statement, finding that the reading of the specifics of the affidavit was likely to elicit a response and that Sawyer had been placed "in an environment in which he could reasonably believe he was to be interrogated." We find the facts of *Sawyer* to be distinguishable from the present case. While the Defendant was informed of why he was under arrest, Dicus made no further attempt to engage the Defendant in a conversation or discuss the specifics of the arrest so as to prompt a response from the Defendant.

Despite the Defendant's argument to the contrary, there is nothing to suggest an ongoing interrogation. The evidence presented at the suppression hearing clearly demonstrates that Officer Dicus was not questioning the Defendant while he was in the car or at any time after his arrest. Indeed, the Defendant himself admits that Dicus did not ask any questions from the time they left the scene until they arrived at the jail. Thus, we cannot conclude that Dicus' actions under the circumstances were likely to evoke an incriminating response from the Defendant. *Cf Sawyer*, 34 S.W.3d at 535. As such, we conclude that the Defendant was not subjected to a custodial interrogation, and *Miranda* warnings were, therefore, not required. While *Miranda* safeguards afford protection against State coercion relative to self-incrimination, *Miranda* does not bar voluntary statements to police officers. 384 U.S. 478, 86 S. Ct. 1630. Accordingly, we conclude that the evidence preponderates against the trial court's findings, and it was error to suppress the voluntary statement made by the Defendant.

## CONCLUSION

Based upon the foregoing, the trial court's suppression of the Defendant's statement is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
DAVID G. HAYES, JUDGE

-5-