# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 7, 2014

## ROY SHOTWELL, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Fayette County**
**No. 5874      Weber McCraw, Judge**

---

**No. W2013-01213-CCA-R3-PC  - Filed January 27, 2014**

---

In 2007, a Fayette County jury found petitioner guilty of two counts of rape and one count of sexual battery. The trial court sentenced him to an effective sentence of twenty years in the Tennessee Department of Correction. This court denied petitioner's direct appeal, and he subsequently filed a petition for post-conviction relief alleging that he received ineffective assistance of counsel. He now appeals from the post-conviction court's order denying relief. Petitioner contends that he received ineffective assistance of counsel when counsel failed to object to evidence that petitioner had been admitted to a mental health facility and when counsel did not appeal the trial court's denial of his motion to suppress certain statements. Following our careful review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

David A. Stowers, Bolivar, Tennessee, for the appellant, Roy Shotwell, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; D. Michael Dunavant, District Attorney General; and Mark Davidson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

#### A. Trial

This court summarized the facts from petitioner's trial as follows:

This case relates to [petitioner]'s rape and sexual assault of his stepdaughter on separate occasions, once when she was thirteen years old and twice when she was fifteen years old. The State originally charged him with three counts of rape.

. . . .

Officer Calvin Ridgell testified that he attended the police academy with [petitioner] and considered him to be his best friend. He said that he went to visit [petitioner], as a friend, when he was incarcerated on the underlying charges. He asked [petitioner] if he had committed the crimes, and [petitioner] admitted he was guilty and "did it." [Petitioner] told him that the sex was consensual, which angered the witness. [Petitioner] acknowledged that he knew it was wrong.

A sergeant with the Fayette County Sheriff's Department testified that he relieved an officer who was with [petitioner] in the hospital on February 14, 2007. His job was to make sure [petitioner] did not leave. [Petitioner] was seated in a chair in the triage room and stated, "I had sex with my stepdaughter. I know it was wrong and I'll pay for it." He further stated that he was in the hospital because he was thinking of cutting his wrists.

A registered nurse testified that she was employed at Methodist Fayette Hospital in Somerville and that she saw [petitioner] in the emergency room on February 14, 2007. She said that [petitioner] was brought in because he had been hearing voices. During the assessment of [petitioner], he told her that he had done wrong and should have to pay for what he did.

The victim's mother testified that she was married to [petitioner]. On February 2, 2007, she discovered the victim's pajamas hidden under a towel behind the bed. She asked the victim why her pajamas were behind the bed. The victim said she did not know but told her mother what [petitioner] had

-2-

done. She called [petitioner] and told him she was taking the victim to the hospital because the victim was sick. When [petitioner] came home, she confronted [petitioner] while they all sat outside in the truck. He initially denied the allegations. When the victim stated what [petitioner] had done to her, he turned around in the front seat, started playing with his hands, and held his hands down. He then apologized to the victim and her mother. He said that he started "messing" with the victim several years ago and that he was sorry. The victim's mother called the police, and [petitioner] was taken into custody.

The victim testified that when she was thirteen years old, [petitioner] called her into his bedroom and asked her to rub "IcyHot" on his back. She said that he was only wearing a towel around his waist and was lying on his stomach. She said that he moved the towel down his body, then got up, grabbed her arms, flipped her on the bed, held her arms down, and removed her clothes. She said that she begged [petitioner] to stop and tried to get away. [Petitioner] penetrated her vagina with his penis.

The second sexual assault occurred when the victim was fifteen years old. She stayed at home because she was sick. [Petitioner] entered the victim's bedroom, turned her over on her bed, spread her legs, and removed her clothes. The victim asked him to stop and unsuccessfully attempted to keep [petitioner] from opening her legs. [Petitioner] again penetrated her vagina but, this time, used a condom. She said that this rape did not last long because the victim's brother called home, and [petitioner] left to pick him up from school.

The third incident occurred when the victim was fifteen years old. She said that she was washing dishes in the kitchen when [petitioner] pushed her into the living room and removed her clothes. [Petitioner] laid her on the couch and held her arms. [Petitioner] penetrated her vagina with his penis while she begged him to stop.

The victim did not tell anyone about the incidents because she was afraid and because [petitioner] was a police officer. [Petitioner] told her he would lose his job if she told anyone.

A nurse practitioner at the Memphis Sexual Assault Resource Center testified that she saw the victim on February 24, 2007. She took a history from the victim and performed a physical examination on her. The examination

revealed that the victim had an injury to the rear of her hymen caused by blunt penetrating trauma.

A special agent with the Tennessee Bureau of Investigation (TBI) testified that she tested the victim's pajamas that were entered into evidence. There was sperm found in the crotch of the pajamas, and it matched [petitioner]'s DNA.

[Petitioner] called a forensic DNA examiner to testify on his behalf. The expert testified that she tested a piece of the fabric from the pajamas and that [petitioner] could not be excluded as a contributor of the DNA mixture found on the pajamas. However, she found female DNA that did not belong to the victim. On cross-examination she testified that the sperm found on the pajamas was a match to [petitioner]'s DNA.

*State v. Roy Shotwell, Jr.*, No. W2008-00682-CCA-R3-CD, 2009 WL 2634637, at *1-2 (Tenn. Crim. App. Aug. 27, 2009), *perm. app. denied* (Tenn. Feb. 22, 2010). Petitioner was convicted of two counts of rape and one count of sexual battery. *Id.* at *2. The trial court sentenced him to consecutive ten-year sentences for the rape convictions and to a concurrent two-year sentence for the sexual battery conviction.

## B. Post-Conviction Hearing

Petitioner filed a petition for post-conviction relief on March 19, 2010. The post-conviction court appointed counsel, who filed an amended petition on December 27, 2010. The court held an evidentiary hearing on January 30, 2013, at which petitioner and trial counsel testified.

Petitioner testified that he was originally represented by an attorney other than trial counsel. The first attorney represented him from general sessions court through the suppression hearing in circuit court. Trial counsel began representing him at some point between the suppression hearing and trial, and he continued representing petitioner through his appeal. Petitioner believed that trial counsel should have addressed the issue of his alleged confessions on appeal.

Trial counsel testified that he was an assistant district public defender and that he had held that position for thirteen years. He had participated in 100 to 150 trials. Trial counsel testified that he began representing petitioner in November 2007 and that petitioner's trial was in December 2007. Trial counsel testified that petitioner's first attorney moved the court to suppress petitioner's statements to Officer Ridgell and Deputy Walker, but she was not

successful. Trial counsel opined that there was no way to prevent those statements from coming out at trial and that the statements were not the result of custodial interrogations. He said that he did not raise that issue on appeal because he did not believe it was meritorious.

On cross-examination, trial counsel testified that he did not believe that the jury was "taint[ed]" by hearing that petitioner had been at a mental health facility. Trial counsel further testified that he believed petitioner's statements overheard by Deputy Walker were admissible because petitioner had "just blurted out" those statements and that his statements to Officer Ridgell were admissible because Officer Ridgell had visited petitioner "in his capacity as a friend . . . not as an agent of the State."

Following the hearing, the post-conviction court issued a written order denying relief. In its order, the post-conviction court specifically accredited trial counsel's testimony and concluded that petitioner did not prove his factual allegations by clear and convincing evidence.

## II. Analysis

On appeal, petitioner contends that trial counsel provided ineffective assistance by failing to object based on relevance when a witness testified that petitioner had been admitted to a mental health facility. Petitioner also argues that trial counsel provided ineffective assistance on appeal when he did not argue that petitioner's statements to Deputy Walker and Officer Ridgell should have been suppressed.

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on

appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the

result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

### B. Failure to Object to Relevance

Petitioner contends that trial counsel provided ineffective assistance when he did not object to a witness's testifying that petitioner had been admitted to a mental health facility. In his brief, petitioner submitted a cursory argument that the testimony was not relevant and that trial counsel should have objected. However, petitioner has not demonstrated to this court that the admission of the testimony prejudiced him in any fashion. Therefore, we conclude that petitioner has not shown that trial counsel provided ineffective assistance in this regard.

### C. Failure to Appeal Trial Court's Denial of Motion to Suppress Statements

For his second issue, petitioner argues that trial counsel provided ineffective assistance on appeal. Specifically, petitioner submits that trial counsel should have appealed the trial court's denial of petitioner's motion to suppress statements made to Deputy Walker and Officer Ridgell. The State responds that the issue was not meritorious and that trial counsel was not ineffective for deciding not to pursue the issue on appeal.

The United States Supreme Court has recognized that due process of law requires that a convicted defendant receive effective assistance of counsel on the direct appeal from his conviction(s). *See Evitts v. Lucey*, 469 U.S. 387 (1985). To determine whether appellate counsel was constitutionally effective, we apply the two-prong test of *Strickland*, the same test used to evaluate claims of ineffective assistance of trial counsel. *Carpenter*, 126 S.W.3d at 886. This court has held:

> There are two approaches to appellate advocacy, known generally as the 'rifle shot' approach and the 'shotgun' approach. Under the rifle shot procedure, counsel presents only those issues which arguably have merit. Under the 'shotgun' approach, every conceivable issue is raised in hope, albeit slim, that the appellate court will see merit in some arcane issue. The choice of which method to use and the choice as to which issues to present under either approach obviously requires strategic and tactical decisions by appellate

counsel. Of course, those decisions are judged by the same standards as all other decisions of counsel.

*Hanson Lee Davis, Jr. v. State*, No. 02C01-9104-CC-00064, 1992 WL 69655, at \*1 (Tenn. Crim. App. Apr. 8, 1992) (footnote omitted) (internal citations omitted). We will not fault appellate counsel for not raising every possible issue on appeal. *Carpenter*, 126 S.W.3d at 887 (citing *King v. State*, 989 S.W.2d 319, 334 (Tenn. 1999); *Campbell v. State*, 904 S.W.2d 594, 596-97 (Tenn. 1995)). Experienced appellate advocates have long "emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Determination of the issues to raise on appeal is a matter left to appellate counsel's sound discretion. *Carpenter*, 126 S.W.3d at 887 (citing *Jones*, 463 U.S. at 751). We accord appellate counsel's professional judgment considerable deference with regard to which issues he believes to be meritorious on appeal. *Id.* As in a review of ineffective assistance of trial counsel, we should not second-guess appellate counsel's decisions and must avoid the distorting effects of hindsight. *Id.* However, we will only defer to counsel's tactical choices if such choices are within the range of competence required of attorneys in criminal cases. *Id.* (citing *Campbell*, 904 S.W.2d at 597).

Moreover,

[i]f a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, then the reviewing court must determine the merits of the issue. Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim.

*Carpenter*, 126 S.W.3d at 887-88. Thus, to fully review petitioner's claim of ineffective assistance of appellate counsel, we must first determine whether the underlying issue, the trial court's denial of petitioner's motion to suppress, has merit.

### 1. Motion to Suppress Hearing

Prior to his trial, petitioner moved to suppress statements he made to Officer Calvin Ridgell and statements he made to a nurse that were overheard by Deputy Terry Walker. The court heard testimony and arguments on the two sets of statements at separate hearings.

### a. Statements Made to Calvin Ridgell

At the suppression hearing, Calvin Ridgell testified that he was an officer with the Memphis Police Department and that he had graduated from the police academy with petitioner. They subsequently worked together for some time, and Officer Ridgell described petitioner as "a good friend." Officer Ridgell testified that in February 2007, he learned through newspapers and the news that petitioner had been charged with rape in Fayette County. He stated that petitioner called him from jail and left a message asking Officer Ridgell to contact him and to contact his family. Officer Ridgell testified that he went to visit petitioner because he wanted to find out for himself whether the accusations were true. His lieutenant approved the visit because petitioner had not yet been convicted.

Officer Ridgell testified that he met with petitioner at Quinco Mental Health Facility in Bolivar, after petitioner gave his approval to the staff there. Officer Ridgell testified that he was not on duty that day and was not in uniform. He explained that he went "just to see a friend." Officer Ridgell asked petitioner, "'[D]id you do what they said you have done?'" Petitioner responded that he was guilty and that he had "'been doing it since she was twelve.'" Officer Ridgell said that petitioner did not want to discuss it further. He testified that they discussed other things that day, like whether petitioner needed any hygiene items. Officer Ridgell said that he would have returned for a second visit but was not able to do so after the Memphis Police Department's Security Squad interviewed him about the first meeting. He explained that if he had not cooperated with the Security Squad, he would have been in violation of departmental policy. Officer Ridgell testified that he told the Security Squad that he had visited petitioner because "he was a very, very close friend."

On cross-examination, Officer Ridgell testified that the facility's security officer was in the room during his conversation with petitioner. He further testified that he would not have visited petitioner if he had known that he would have to testify against him.

In its ruling denying the motion to suppress, the trial court found that petitioner initiated the contact with Officer Ridgell and that Officer Ridgell visited because he was a close friend. The trial court concluded that the conversation between Officer Ridgell and petitioner was not an interrogation and characterized petitioner's statements as "voluntary statement[s] made between friends."

### b. Statements Made in the Presence of Deputy Walker

At the suppression hearing, Deputy Walker testified that he was assigned to guard petitioner at the emergency room. Deputy Walker overheard petitioner tell a nurse that he was there because he had considered cutting his wrists. He also overheard petitioner say,

apparently to no one in particular, "'I had sex with my stepdaughter. I know it was wrong[,] and I will pay for it.'" Deputy Walker said that he never spoke to the petitioner. Following Deputy Walker's testimony, the trial court ruled that petitioner's statements made in Deputy Walker's presence were voluntary statements and denied the motion to suppress.

c. Applicable Law

Had this issue been addressed during petitioner's direct appeal, the trial court's factual findings would have been presumed to be correct, but its legal conclusions would have been reviewed de novo. *See State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008) (citations omitted); *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994) (citing *State v. Harbison*, 704 S.W.2d 314, 318 (Tenn. 1986)), *abrogated on other grounds by State v. Saylor*, 117 S.W.3d 239 (Tenn. 2003). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). This court might have also considered the evidence presented at trial "in deciding the propriety of the trial court's ruling on the motion to suppress.'" *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003) (quoting *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). The State, as the prevailing party, would be afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

The basis for petitioner's motions to suppress his statements to Officer Ridgell and Deputy Walker lies in federal and state constitutional protections against compelled self-incrimination. "The Fifth Amendment to the United States Constitution provides in part that 'no person . . . shall be compelled in any criminal case to be a witness against himself.'" *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005) (quoting U.S. Const. amend. V). "Similarly, Article I, section 9 of the Tennessee Constitution states that 'in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself.'" *Id.* (quoting Tenn. Const. art. I, § 9). "The test of voluntariness for confessions under article I, § 9 of the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996) (citing *Stephenson*, 878 S.W.2d at 544). To be considered voluntary, a statement to law enforcement "'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'" *State v. Brock*, 327 S.W.3d 645, 687 (Tenn. Crim. App. 2009) (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)). Therefore, "voluntariness" hinges upon the inquiry of "'whether the behavior of the [s]tate's law enforcement officials was such as to

overbear [appellant's] will to resist and bring about confessions not freely self-determined . . . .'" *State v. Kelly*, 603 S.W.2d 726, 728 (1980) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)). However, "[a] defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense." *Brock*, 327 S.W.3d at 687 (quoting *Smith*, 933 S.W.2d at 455). Rather, "coercive police activity is a necessary predicate to finding that a confession is not voluntary . . . ." *Id.* (quoting *Smith*, 933 S.W.2d at 455). The voluntariness of a statement is determined by an examination of the totality of the circumstances. *See Kelly*, 603 S.W.2d at 728-29. In addition, due to "the inherently compelling pressures of in-custody interrogation," the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), "limited the admissibility of statements that would ordinarily meet the due process test of voluntariness" by establishing prophylactic rules designed "to permit a full opportunity to exercise the privilege against self-incrimination." *State v. Crump*, 834 S.W.2d 265, 268 (Tenn. 1992)).

### d. Application

In this case, the first question with regard to Officer Ridgell is whether he was a state actor. If he was not a state actor, then the constitutional protections do not apply. *See Colorado v. Connelly*, 479 U.S. 157, 166 (1986) ("The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause."). It is clear that Officer Ridgell was not acting in his official capacity as a police officer. Not only was he not an investigating officer, the law enforcement agency by which he was employed did not have jurisdiction over the investigation. The question remains whether Officer Ridgell, simply because he was a police officer and obtained permission from his lieutenant before meeting with petitioner, was a state actor. If we determine that he was a state actor, then we must also determine whether petitioner's confession was voluntary.

In *State v. Burroughs*, 926 S.W.2d 243, 246 (Tenn.1996), our supreme court adopted the "legitimate independent motivation test" for determining whether a private individual acted as an agent of the State.[1] Although the test was originally developed for determining the admissibility of evidence following a Fourth Amendment violation by a citizen, our supreme court as well as other courts have found it instructive in determining whether a Fifth Amendment violation had occurred. *State v. Ackerman*, 397 S.W.3d 617, 648 (Tenn. Crim.

---

[1] The Tennessee Supreme Court has granted permission to appeal in at least two cases involving whether a witness was a state actor. *See State v. Henry Floyd Sanders*, No. M2011-00962-CCA-R3-CD, 2012 WL 4841545, at *9-10 (Tenn. Crim. App. Oct. 9, 2012), *perm. app. granted* (Tenn. Feb. 15, 2013); *State v. Fred Chad Clark, II*, No. M2010-00570-CCA-R3-CD, 2012 WL 3861242, at *28 (Tenn. Crim. App. Sept. 6, 2012), *perm. app. granted* (Tenn. Feb. 13, 2013).

App. 2012) (citing *United States v. Day*, 591 F.3d 679, 683 (4th Cir. 2010) ("[R]egardless of whether the Fourth or Fifth Amendment is at issue, we apply the same test to determine whether a private individual acted as a Government agent.")). "The goal of the test . . . is to determine whether 'the government exercised such coercive power or such significant encouragement that it is responsible for the conduct of the private party securing the evidence, or that the exercised powers are the exclusive prerogative of the government.'" *Id.* (quoting *United States v. Garlock*, 19 F.3d 441, 443 (8th Cir. 1994) (citation omitted in original)). The pivotal inquiries under the "legitimate independent motivation" analysis are: "(1) the government's knowledge and acquiescence; and (2) the intent of the party performing the search." *Burroughs*, 926 S.W.2d at 246. However, our supreme court places greater weight on the second factor. *Id.*

Officer Ridgell testified that he was close friends with petitioner and that petitioner contacted him after he was arrested. Officer Ridgell further testified that he visited petitioner solely because they were friends and that if he had known he would have to testify against petitioner, he would not have visited. No one from the Memphis Police Department or the Fayette County Sheriff's Department encouraged Officer Ridgell to visit petitioner, and he did not wear a recording device during that visit. Petitioner obviously knew that Officer Ridgell was a police officer but desired to meet with him anyway. Officer Ridgell admitted that he asked petitioner whether he was guilty, but when petitioner did not want to give any details, Officer Ridgell did not pressure him. Taking all of this into consideration, we cannot say that Officer Ridgell was a state actor, and even if he were, we conclude that under these circumstances, he did not coerce petitioner into confessing.

Regarding petitioner's statements that were overheard by Deputy Walker, petitioner now argues that the trial court should have considered whether the situation in which the statement was made was the functional equivalent of a custodial interrogation. The United States Supreme Court in *Rhode Island v. Innis* provided the following guidance for lower courts:

[T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police *(other than those normally attendant to arrest and custody)* that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response

-12-

from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known were reasonably likely to elicit an incriminating response*.

*Innis*, 446 U.S. 291, 301-02 (1980) (emphasis added) (footnote call numbers omitted); *see also State v. Sawyer*, 156 S.W.3d 531, 533 (Tenn. 2005).

In this case, Deputy Walker was merely standing guard while petitioner received treatment. He never spoke with petitioner, and there is no evidence that he took any action that he should have known was reasonably likely to elicit an incriminating response. Therefore, because the deputy was not interrogating petitioner nor practicing its functional equivalent, petitioner was volunteering information when he confessed. "Volunteered statements of any kind are not barred by the Fifth Amendment[,] and their admissibility is not affected" by the holding of *Miranda*. *Miranda*, 384 U.S. at 478; *see also State v. Hurley*, 876 S.W.2d 57, 66 (Tenn. 1993); *State v. Ensley*, 956 S.W.2d 502, 511 (Tenn. Crim. App. 1996); *State v. Ezra Shawn Ervin and Andrew McKinney*, E1999-00287-CCA-R3-CD, 2001 WL 15832, at *3 (Tenn. Ct. App. Jan. 9, 2001). Thus, neither of petitioner's suppression arguments have merit.

Because we have determined that petitioner's suppression arguments are not meritorious, we further conclude that trial counsel was not ineffective for failing to address the issues on appeal. *See Carpenter*, 126 S.W.3d at 887-88. Therefore, petitioner is without relief as to this issue.

## CONCLUSION

Based on the record, the applicable law, and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE