FILED

06/29/2018

Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 3, 2017 Session

## STATE OF TENNESSEE v. RAMEY MICHELLE LONG

**Appeal from the Circuit Court for Henderson County**
**No. 16-095-2    Donald H. Allen, Judge**

_____

### No. W2016-02471-CCA-R3-CD

_____

The Appellant, Ramey Michelle Long, was convicted by a jury of the Class A misdemeanors driving under the influence (DUI); DUI, second offense; possession of marijuana; and possession of drug paraphernalia. The Appellant was also convicted of the Class C misdemeanors speeding and violating the open container law. The trial court merged the DUI convictions and imposed a sentence of eleven months and twenty-nine days for each Class A misdemeanor and thirty days for each Class C misdemeanor. The court ordered the sentence for the DUI conviction to be served consecutively to the remaining sentences, which were to be served concurrently. The trial court further approved of the fines imposed by the jury, which were the maximum allowable for each offense, for a total of $8,600. On appeal, the Appellant contends that (1) the evidence was insufficient to sustain her conviction of DUI, second offense; (2) the trial court erred by denying her motions to suppress; (3) the trial court erred by preventing her from introducing her pharmaceutical records, medical records, hardware taken from her back during surgery, and a hand-drawn chart concerning the therapeutic levels of her medication; (4) the trial court erred by admitting still photographs taken from a video; (5) the trial court failed to dismiss the speeding charge because it was not included in the indictment; (6) the trial court erred in sentencing; and (7) the trial court erred in revoking her bond pending appeal. Upon review, we conclude that the trial court erred by imposing a thirty-day sentence for violating the open container law; accordingly, the case must be remanded for correction of the judgment of conviction to reflect that the punishment is a $50 fine. Further, on remand the judgment of conviction for speeding must be vacated and dismissed. We affirm the trial court's judgments in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Vacated in Part; Case Remanded**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Michael S. Long, Memphis, Tennessee, for the Appellant, Ramey Michelle Long.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; James G. Woodall, District Attorney General; and Christopher W. Post, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Procedural and Factual Background

A.  Procedural History

As a result of a traffic stop effectuated by two Henderson County sheriff's deputies, the Appellant was indicted for DUI; DUI, second offense; possession of marijuana; possession of drug paraphernalia; and violating the open container law.  The true bill reflects the Appellant also was indicted for speeding; however, the indictment did not include a charge of speeding.  Nevertheless, at trial, the jury was instructed on speeding and convicted the Appellant of that offense.

The Appellant filed a pretrial motion to suppress evidence adduced as a result of the traffic stop.  After a hearing, the motion was denied.  Subsequently, a trial was held; however, the Appellant chose not to hire a court reporter, and on December 19, 2016, she filed a statement of the evidence that purported to be an accurate account of what transpired during trial.  See Tenn. R. App. P. 24(c), (e).  On December 22, 2016, the State filed a written objection to the Appellant's statement of the evidence, contending that the Appellant's facts were "substantially different than what the State recall[ed]," that "numerous matters [were] improperly included" in the Appellant's facts, that "numerous matters [were] improperly misstated" in the Appellant's facts, and that "numerous essential matters that [were] properly includable, [were] omitted" from the Appellant's facts.

On March 6, 2017, before the trial court ruled upon the objection, the Appellant filed her appellate brief, which contained citations to the statement of the evidence she had submitted.  The State filed a motion in this court, seeking a remand to the trial court for a "settlement of the statement of the evidence."  On May 3, 2017, this court granted the motion, and the case was remanded to the trial court.  On May 16, 2017, the State filed its proposed statement of the evidence, and on May 25, 2017, the Appellant filed a response challenging the State's statement of the evidence.  On July 5, 2017, the trial

court filed an order in which it adopted the State's statement of the evidence as "true and correct" and ruled that the Appellant's statement of the evidence was "denied."

The Appellant filed a reply brief disputing the facts included in the statement of the evidence. However, Tennessee Rule of Appellate Procedure 24(e) provides that "[a]ny differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive." See State v. Tommy Pleas Arwood, Jr., No. M2003-01125-CCA-R3-CD, 2007 WL 1890100, at *7 (Tenn. Crim. App. at Nashville, June 28, 2007). The Appellant has not alleged the existence of any extraordinary circumstances that warrant disturbing the determination of the trial court; accordingly, we conclude that the trial court's ruling is conclusive and that the statement of the evidence approved by the trial court is controlling. See State v. Madden, 99 S.W.3d 127, 141 (Tenn. Crim. App. 2002).

## B. Statement of the Evidence

Based upon the statement of the evidence, Deputy Terry Moody[1] testified that he had been employed by the Henderson County Sheriff's Office for seven years and that he had been trained in detecting if a person was driving under the influence and in conducting standardized field sobriety tests.

At approximately 10:30 p.m. on August 18, 2015, Deputy Moody was training Deputy Daniel Martin, and they were running stationary radar on Interstate 40 in Henderson County. They "clocked" the Appellant driving 84 miles-per-hour (mph) in a 70 mph zone. The deputies pursued the Appellant in their vehicle and signaled for her to stop. The Appellant parked on the shoulder of the interstate. The deputies exited their vehicle, approached the front passenger's side of the Appellant's vehicle, and asked her to roll down her window. When the window was lowered, Deputy Moody "immediately noticed the smell of burn[ed] marijuana coming from inside" the Appellant's vehicle. Deputy Moody asserted that he knew the difference between the odor of marijuana that had not been smoked and marijuana that had been smoked. He asked the Appellant for her driver's license, registration, and proof of insurance. She "seemed sleepy and confused," stopped looking for the documents during the search, and had to be reminded to continue looking for the documents. Deputy Moody asked for the Appellant's point of origin and destination, and she responded that she was driving from Nashville to Memphis.

---

[1] The statement of the evidence did not contain the deputies' first names. However, at the suppression hearing, which was transcribed by a court reporter, the deputies testified regarding their first names. We have included them here for completeness.

Deputy Moody saw an "open container of beer beside the console on the passenger side like she was trying to hid[e] it because [the police] normally go to the driver side window." Deputy Moody asked if the Appellant "had been smoking marijuana." She responded, "[N]o never." Deputy Moody then asked the Appellant to explain why he smelled marijuana in her vehicle. She replied that she might "have been around people who were smoking it."

Deputy Moody said that based upon his training and experience, he thought the Appellant showed signs of impairment, sleepiness, and confusion as well as "the odor of burn[ed] marijuana while speaking with her." As the deputies returned to their patrol car, Deputy Martin confirmed that he had smelled marijuana.

The video of the traffic stop that was recorded by Deputy Moody's body camera was played for the jury; however, the State redacted a portion of the video wherein the Appellant mentioned that she had a prior DUI conviction. While the video played, Deputy Moody told the jury what was transpiring on the video. He stated that after "running" the Appellant's driver's license, he and Deputy Martin returned to the Appellant's vehicle. Deputy Moody asked the Appellant to exit her vehicle and perform field sobriety tests to ensure she could safely operate a motor vehicle. Deputy Moody explained that field sobriety tests were "standardized divided attention tasks" used to determine if a driver could "follow simple directions and do tasks at the same time like everyone on the road driving a vehicle does." Acceding to Deputy Moody's request, the Appellant got out, walked to the back of the vehicle, and stood between the back of her vehicle and the front of Deputy Moody's patrol car. The Appellant told Deputy Moody that she had been hit by a car and had back surgery in May, but he noticed that she did not seem worried about other vehicles on the road. When she was standing in front of him, he smelled alcohol on her breath; however, she denied that she had consumed any alcohol or smoked any marijuana. Deputy Moody asked the Appellant if she had alcohol or illegal drugs in her vehicle, and she responded in the negative.

Deputy Moody asked if the Appellant had any medical issues that would hinder her performance of the field sobriety tests. The Appellant mentioned her back but said she could perform the tests. Deputy Moody turned off the front blue lights of his patrol car so the lights would not bother her during the tests. When the Appellant "made a statement about being hit by a car on the side of the road," Deputy Moody told Deputy Martin to ensure the interstate traffic moved over into the far left lane.

Deputy Moody explained and demonstrated the horizontal gaze nystagmus (HGN) test. He did not testify regarding the results of the HGN test but said that the Appellant disregarded his instruction to follow the pen with only her eyes, explaining that she moved her head during the test. Next, Deputy Moody explained and demonstrated the

- 4 -

walk and turn test. He asked if the Appellant understood the instructions, and she responded affirmatively. The Appellant repeated that "she had a bad back" but said "that it's ok." During the test, Deputy Moody saw three "clues" of impairment, namely that the Appellant "raised her arms for balance, she could not keep her feet heel to toe[,] and upon making the ninth step[,] she stopped and looked at Deputy Moody[,] and he had to explain how to make the turn again." Additionally, Deputy Moody thought it was "unusual" that the Appellant laughed when she made her turn on the ninth step. Deputy Moody maintained that the Appellant "did not seem nervous about the traffic during the walk and turn test and only mentioned it after she did poorly on the test."

Regarding the final field sobriety test, Deputy Moody explained and demonstrated how to perform the one leg stand. The Appellant assured Deputy Moody that she understood the instructions. During the test, Deputy Moody saw three "clues" of impairment, namely that the Appellant "raised her arms for balance, struggled to keep her balance, and would not count as instructed."

The State introduced a still photograph taken from the video recorded by Deputy Moody's body camera. According to the statement of the evidence, the photograph showed the Appellant was "not worried about the traffic . . . ." The Appellant objected to the photograph based on the best evidence rule, and the trial court overruled the objection, stating that the photograph was relevant and that its prejudicial value did not outweigh its probative value.

Deputy Moody stated that the Appellant did not perform any of the field sobriety tests satisfactorily. He arrested the Appellant for DUI and placed her in the back of his patrol car. He opined that the Appellant seemed calm.

Deputy Moody and Deputy Martin then searched the Appellant's vehicle based upon the odor of burned marijuana in the vehicle and the arrest of the Appellant. The officers described the Appellant's vehicle as "messy." During the search, Deputy Moody found an open bottle of beer within arm's reach of the driver's seat. Deputy Moody also found two "six-packs" of beer in the front passenger side floorboard. The beer was within arm's reach of the driver's seat. In the center console, Deputy Moody found a small pipe containing marijuana residue and a green leafy substance inside a plastic container. The Tennessee Bureau of Investigation (TBI) later determined that the substance was marijuana.

When Deputy Moody returned to his patrol car to tell the Appellant the results of the search, she was asleep. He had to knock on the window of the patrol car in order to wake her. The State introduced a still photograph from the video recorded by Deputy Moody's body camera, which showed the Appellant asleep in the back of the patrol car. The Appellant objected to the photograph based on the best evidence rule. The trial court

overruled the objection, holding that the photograph was relevant and that the prejudicial value did not outweigh the probative value.

Deputy Moody testified that he gave the Appellant "a chance to come clean about the empty beer bottles, marijuana, and marijuana pipe" found in her vehicle; however, she claimed the items belonged to a friend who had ridden in the car. Deputy Moody then informed the Appellant of the implied consent law, and she agreed to a blood test.

Deputy Moody took the Appellant to the Henderson County Community Hospital, and a nurse drew the Appellant's blood. The blood was packaged, sealed, and delivered to the TBI crime laboratory for analysis. Deputy Moody asserted that based on his training and experience, the Appellant "was not safe to operate a motor vehicle that night . . . ."

Deputy Martin testified consistently with Deputy Moody's testimony. He added that during the search of the Appellant's vehicle, he found a pill bottle containing "an assortment of pills," a marijuana "roach," two empty beer bottles, and matching bottle caps under the driver's seat. He acknowledged that he did not take the marijuana roach into evidence. Deputy Martin agreed with Deputy Moody's assessment that the Appellant was not safe to operate a motor vehicle.

TBI Special Agent Brock Sain, who was declared an expert in controlled substance identification, testified that the green leafy substance found in the Appellant's vehicle was marijuana and that it weighed 0.51 grams.

TBI Special Agent Julian Conyers, who was declared an expert in blood alcohol toxicology, determined that the Appellant's blood alcohol content was 0.012. Special Agent Conyers explained that according to the TBI's policy, if the blood alcohol concentration was less than .08%, the blood sample was sent for further testing to determine if any drugs were present in the blood.

TBI Special Agent Tonya Horton, who was declared an expert in forensic blood toxicology, tested the Appellant's blood for drugs and "found 66ng/ml of 11-nor-carboxy-delta-9-THC, 0.06ug/m1 of [v]enlafaxine, and 0.05 ug/ml [d]ihydrocodeinone (hydrocodone)." Special Agent Horton explained that smoking marijuana could "have a sedative effect on a person." Special Agent Horton explained that the TBI tested only "for the inactive metabolite of marijuana," which was THC. Special Agent Horton asserted that a person could not obtain the level of THC found in the Appellant's blood merely "by being around people smoking" marijuana. Special Agent Horton testified that venlafaxine was an anti-depressant, that dihydrocodeinone was a pain medication, and that both medications had a sedative effect. Special Agent Horton stated that mixing sedative drugs with alcohol increased the sedative effects.

Special Agent Horton testified that the levels of THC, venlafaxine, dihydrocodeinone, and alcohol found in the Appellant's blood "can have an impairing effect on a person." She explained that "opio[i]d receptors in the brain are different than THC, alcohol, and venlafaxine and that even if someone was still IQ tolerant from the opio[i]ds (hydrocodone) that person can still be impaired even if they have built up a tolerance to the opio[i]ds."

Special Agent Horton said that the TBI does not test for the drug fentanyl, so she sent a sample of the Appellant's blood to a private lab for further testing, which "came back positive for [f]entanyl 0.39 ng/ml." Special Agent Horton "testified that the combination of the alcohol and the different drugs in the [Appellant's] system can impair her ability to safely operate a motor vehicle." On redirect examination, Special Agent Horton asserted that fentanyl would increase the Appellant's impairment.

Henry Spiller, an expert in forensic toxicology, testified on the Appellant's behalf. He examined the TBI's laboratory reports, the Appellant's prescription records, and the citations Deputy Moody gave the Appellant. Spiller opined that the combination of alcohol and drugs in the Appellant's system would not have impaired her ability to operate a motor vehicle.

On cross-examination, Spiller admitted that he was paid $750 to prepare a report for the Appellant and was paid $1,500 to testify on her behalf. He acknowledged that he did not review the video recording of the Appellant's performance on the field sobriety tests and that he did not speak with the Appellant. Spiller acknowledged that the prescription records upon which he relied "were used solely for insurance purposes" and did not reflect "how many [pills] she was taking." Spiller testified that when a drug was within a therapeutic level, the drug was "having the desired effect on the person." Spiller agreed that if he walked into a room and smelled burned marijuana, saw marijuana, and saw a marijuana pipe with residue inside of the pipe, he logically could infer that marijuana had been smoked recently.

The Appellant acknowledged that she was speeding when she was stopped by the deputies and that she pulled over to the shoulder of the road and activated her vehicle's hazard lights. She stated that she had consumed only one beer with dinner and that she had not smoked marijuana recently. She acknowledged, however, "that she had medical marijuana from California to help with her pain." She further acknowledged that she took "[A]dderall to stay awake and study and smoke[d] marijuana to help her calm down and sleep." She stated that during the field sobriety tests, she was "was wearing soft sole Wallabee shoes," and the traffic on Interstate 40 "created additional wind." She did not know she could not use her arms for balance during the tests and thought she performed well on the tests.

Defense counsel attempted to introduce the Appellant's pharmacy records to show she had a valid prescription for the drugs found in her system. However, the trial court sustained the State's objection, finding that the Appellant testified regarding her prescriptions, the length of time she had taken the drugs, her tolerance for the drugs, and her belief that the drugs did not impair her. Additionally, the trial court stated that the State did not dispute that the Appellant had valid prescriptions for the drugs, except marijuana, found in her blood. The trial court also sustained the objection because the Appellant failed to lay a proper foundation for the admission of the pharmacy records.

Next, defense counsel attempted to introduce the Appellant's medical records to show that she had back surgery on May 6, 2015. The State objected, arguing that the Appellant testified about her back surgery, that she mentioned her back surgery on the video recording of the stop, and that the medical records were not relevant. Defense counsel then attempted to introduce two steel rods and eight pedicle screws that were allegedly taken from the Appellant's back during surgery. However, the trial court sustained the State's objection, finding that the physical evidence was "hearsay and lacked chain of custody because there was no doctor there to say those were taken from her back." Additionally, defense counsel attempted to introduce a chart he had drawn to show the therapeutic levels of each drug in the Appellant's system. Again, the trial court sustained the State's objection, holding that defense counsel did not ask the State's expert or the defense's expert about the accuracy of the chart; therefore, "[t]here was no way to prove those levels were what they purported to be."

On cross-examination, the Appellant agreed that she was taking her medications as prescribed, but she could not explain why she kept three different types of the same pill in one bottle. The Appellant admitted that she lied to the deputies about drinking and explained she did not want to get in trouble or have the officers search her car. The Appellant admitted that she drank two beers at dinner, not one beer as she had testified on direct examination. She asserted that she stopped drinking beer at dinner "because she did not like the taste." The Appellant acknowledged that it was illegal to possess marijuana in Tennessee. She maintained "that she had a tolerance to hydrocodone." The Appellant agreed that the video of the DUI stop was "accurate."

The jury found the Appellant "guilty as charged on all counts with the maximum fines within each range." During the second phase of the bifurcated proceeding, the State introduced a certified copy of a prior DUI conviction in 2009 in Hickman County. The jury found the Appellant guilty of DUI, second offense, and imposed the maximum fine.

Following the proceedings, the trial court instructed the Appellant to turn in her driver's license, but she told the court that she did not have her license with her. She also refused to take a drug screen, and the trial court revoked her bond and she was taken into

custody. An officer searched the Appellant and discovered that she had her driver's license with her. The officer found a pill bottle containing 6 different types of pills. The Appellant then was charged with simple possession.

On appeal, the Appellant challenges the sufficiency of the evidence sustaining her conviction of DUI, second offense. She also maintains the trial court erred by denying her motions to suppress the statements she made during the traffic stop because she was never advised of her <u>Miranda</u> rights and the evidence seized from her vehicle because the search was illegal. She asserts that the trial court erred in several evidentiary rulings, namely by preventing her from introducing her pharmaceutical records, medical records, hardware taken from her back during surgery, and a hand-drawn chart showing the therapeutic levels of her medication. She also contends that the trial court erred by admitting still photographs taken from a video recorded by Deputy Moody's body camera. Additionally, she contends that the trial court should dismiss the speeding charge because the indictment did not charge her with speeding. She also challenges the length of her sentences. Finally, the Appellant challenges the trial court's revocation of her bond.

## II. Analysis

### A. Motion to Suppress

Prior to trial, the Appellant filed a motion to suppress, alleging that the deputies did not have a warrant to search her vehicle and that she did not give them consent to search. Regarding the marijuana, glass pipe, and beer found in her car, the Appellant claimed that the items were not "in plain view," noting that the video revealed the deputies took "several minutes" to find the items. The Appellant further contended that no exigent circumstances justified the warrantless search of her vehicle. The Appellant maintained that the deputies' claim of smelling burned marijuana was merely a "pretext," noting the blood test results that showed metabolized marijuana, not active marijuana, was in her blood. The Appellant also maintained that the deputies failed to advise her of her <u>Miranda</u> rights; therefore, any statements she made to the deputies should be suppressed.

At the suppression hearing, Deputy Moody testified consistently with his trial testimony as summarized in the statement of the evidence. Notably, Deputy Moody stated that when he approached the Appellant's vehicle, he smelled the "strong odor of marijuana." After the Appellant's unsuccessful performance of field sobriety tests, he arrested her for DUI and placed her in the back of his patrol car. Deputy Moody then searched her vehicle because of the strong odor of marijuana coming from her vehicle. The search took a "little bit of time" because the vehicle was so messy. On the front passenger's seat, he found an open plastic bag containing small plastic containers with

clear lids. Each of the containers contained marijuana. On the front passenger side floorboard, he found two six-packs of beer. Three bottles were missing from the packs; two of the bottles were empty and one was open. He also found a glass pipe with marijuana residue inside it. The marijuana, pipe, and beer were all within "arm's length" of the driver's seat.

On cross-examination, Deputy Moody initially said that the marijuana was found in a "white plastic container" and that "[y]ou could see [the marijuana] through the container." However, when defense counsel later asked if the marijuana was in a white container that he could not see through, Deputy Moody responded, "I believe that's what I stated. I'm not sure." He recalled that he found the pipe on the console and that it may have taken him over ten minutes to find it due to the messiness of the vehicle. Deputy Moody asserted that he did not know how long it took for marijuana to metabolize in a person's blood, how long metabolized marijuana remained in a person's blood, or the effect of metabolized marijuana on a person.

Deputy Martin's testimony primarily echoed Deputy Moody's testimony, adding that he found a marijuana "roach" inside the Appellant's vehicle. He recalled that inside a plastic Walmart bag on the front passenger's seat, Deputy Moody found a clear Tupperware container holding small glass jars of marijuana. He asserted that he could see through the Tupperware and the glass jars because they were "all clear."

A copy of the video recording of the stop was introduced and played during the suppression hearing. Our review of the video confirms the deputies' testimony. After the stop was effectuated, the deputies spoke with the Appellant and obtained her driver's license. As the deputies walked back to the patrol car, they discussed smelling marijuana in the Appellant's vehicle. Deputy Martin remarked that he had seen an "open container" in the floorboard, and Deputy Moody agreed that he also had seen it. After speaking with the dispatcher, the deputies returned to the Appellant's vehicle and asked her to get out of the vehicle to perform field sobriety tests. Before beginning the tests, Deputy Moody asked the Appellant to be honest about whether she had drugs such as marijuana in the vehicle, informing her that he had smelled a strong odor of marijuana and that he intended to search her vehicle. The Appellant denied having marijuana in the vehicle. After conducting the field sobriety tests, Deputy Moody placed the Appellant in the back of the patrol car, and the deputies began searching her vehicle. In less than one minute, the deputies found two six-packs of beer with three missing bottles in the front passenger's side floorboard. The deputies repeatedly remarked upon the strong smell of marijuana in the vehicle. During the search, Deputy Moody paused and asked Deputy Martin to retrieve gloves for both of them from the patrol car. When the search resumed, Deputy Moody looked inside a white plastic Target bag that was on the front passenger's seat. Deputy Martin said, "There's a roach right there"; however, the "roach" could not be seen on the video. Inside the plastic bag was a small, transparent, plastic container

with a clear or sheer white bottom and a blue or purple lid. The container held small glass bottles which contained marijuana. A few minutes later, Deputy Moody found a glass pipe in the console.

At the conclusion of the hearing, the trial court accredited the testimony of the deputies, finding that the stop for speeding was lawful and that the deputies had probable cause to search the vehicle based upon the strong odor of marijuana coming from the vehicle. The trial court further held that the Appellant was not in custody at the time of the traffic stop; therefore, she was not entitled to Miranda warnings.

Generally, when this court reviews a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact[, and . . .] a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). On appeal, the prevailing party is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Moreover, "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

1. Search

First, we will address the Appellant's claim that the search of her vehicle was illegal. The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against "unreasonable searches and seizures." In general, warrantless searches and seizures are presumptively unreasonable and any evidence obtained as a result of the warrantless action is subject to suppression. State v. Richards, 286 S.W.3d 873, 878 (Tenn. 2009). However, if the State "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement," the evidence will not be suppressed. State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). The recognized exceptions to the requirement include (1) a search incident to an arrest, (2) the plain view doctrine, (3) a consent to the search, (4) a Terry stop and frisk, and (5) the existence of exigent circumstances. State v. Berrios, 235 S.W.3d 99, 104 (Tenn. 2007).

At the suppression hearing, the trial court accredited the deputies' testimony that the Appellant was driving 84 mph in a 70 mph zone. At trial, the Appellant conceded that she was speeding when she was stopped by the deputies. The Appellant does not

appear to challenge the validity of the stop. Nevertheless, we note that we agree with the trial court's determination that the deputies had probable cause to stop the Appellant for violating the speed limit. See State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005) (stating that, generally, a traffic stop based upon probable cause to believe a traffic violation has occurred is constitutionally reasonable).

In her appellate brief, the Appellant repeatedly complains that the marijuana, glass pipe, and beer were not in "plain view." As we noted, the plain view doctrine is one of the few recognized exceptions to the warrant requirement. State v. Cothran, 115 S.W.3d 513, 524-25 (Tenn. Crim. App. 2003). However, plain view was not the exception relied upon by the State to justify the warrantless search in the instant case. Instead, the State argued that the deputies had probable cause to search the Appellant's vehicle when they smelled the odor of burned marijuana coming from the vehicle. The trial court agreed with the State. This court previously has held that "[t]he detection of the odor of marijuana was sufficient to allow the subsequent warrantless search of the automobile." Hicks v. State, 534 S.W.2d 872, 874 (Tenn. Crim. App. 1975); see also State v. Hughes, 544 S.W.2d 99, 101 (Tenn. 1976). Accordingly, we agree with the trial court that upon smelling marijuana in the Appellant's vehicle, the deputies "had probable cause to search the vehicle pursuant to the exigent circumstances relating to the inherent mobility of automobiles." State v. Tywan Garcia Armstrong, No. M2008-02837-CCA-R3-CD, 2010 WL 987207, at *6 (Tenn. Crim. App. at Nashville, Mar. 18, 2010); see State v. Saine, 297 S.W.3d 199, 207 (Tenn. 2009) (holding that the United States and Tennessee constitutions do not require a separate finding of exigency to justify an immediate search of a vehicle under the "automobile exception" to the warrant requirement).

The Appellant disputes the trial court's credibility finding, arguing that the deputies' testimony that they smelled marijuana in her vehicle was impeached by her blood test results. She argues that the test revealed only "an inactive metabolite of THC" in her blood, which suggested "she had not recently smoked marijuana for at least several hours." We disagree. The Appellant adduced no proof regarding the "inactive metabolite of THC" at the suppression hearing. Moreover, at trial, Special Agent Horton testified that the TBI tests only "for the inactive metabolite of marijuana" and that "it [was] still possible that [the marijuana] was smoked recently." Therefore, the evidence does not preponderate against the trial court's credibility finding. We conclude that the trial court did not err by denying the Appellant's motion to suppress the items found during a search of her vehicle.

## 2. Statements

Next, we will address the Appellant's contention that the traffic stop was a custodial interrogation, that the deputies did not advise her of her Miranda rights, and that any statements she made to the deputies should be suppressed. The State responds that

the trial court correctly found that the Appellant was not in custody, that she was not entitled to Miranda warnings, and that her statements were not subject to suppression. We agree with the State.

In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." These procedural safeguards require that a law enforcement officer must advise a defendant of her right to remain silent and of her right to counsel before initiating custodial interrogation. State v. Sawyer, 156 S.W.3d 531, 534 (Tenn. 2005). The requirement that Miranda warnings be given is triggered only when a defendant is (1) in custody and (2) is subjected to custodial interrogation. See Walton, 41 S.W.3d at 82. Generally, "in custody" means "whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996). However, the United States Supreme Court has held specifically that when a person is detained temporarily for a traffic stop, even when the stop is to investigate a driver's intoxication, the person is not "in custody" for the purposes of Miranda. Berkemer v. McCarty, 468 U.S. 420, 440 (1984). Tennessee courts repeatedly have followed the holding in Berkemer. See State v. Deborah Davis, No. E2011-01519-CCA-R3-CD, 2012 WL 6727512, at *8 (Tenn. Crim. App. at Knoxville, Dec. 27, 2012); State v. Ricky Ronald Crawford, No. E2005-02018-CCA-R3-CD, 2007 WL 283141, at *7 (Tenn. Crim. App. at Knoxville, Feb. 1, 2007); State v. Roger Odell Godfrey, No. 03C01-9402-CR-00076, 1995 WL 120464, at *3 (Tenn. Crim. App. at Knoxville, Mar. 20, 1995). We conclude that the trial court did not abuse its discretion by denying the Appellant's motion to suppress her statements.

## B. Sufficiency of the Evidence

The Appellant contends the trial court erred by failing to grant her motion for a judgment of acquittal at the conclusion of the State's proof or the conclusion of the defense's proof. The record does not reflect that the Appellant made such a motion; therefore, the issue is waived.[2] See Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Nevertheless, the Appellant also has challenged the sufficiency of the evidence sustaining her conviction of DUI, second offense. "[T]he standard by which the trial court determines a motion for judgment of acquittal at the end

---

[2] The instant case demonstrates the potential pitfalls faced by an appellant who chooses to rely on a statement of the evidence.

of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000). Therefore, we will address the Appellant's challenge to the sufficiency of the evidence.

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011).

Tennessee Code Annotated section 55-10-401(a)(1), the DUI statute, provides, in pertinent part, that

> [i]t is unlawful for any person to drive or to be in physical control of any automobile or other motor vehicle on any of the public roads and highways of the state . . . while [u]nder the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess[.]

Tennessee Code Annotated section 55-10-402(a)(2)(A) provides that upon being convicted of DUI, second offense, a defendant shall "be sentenced to serve in the county

jail or workhouse not less than forty-five (45) consecutive days nor more than eleven (11) months and twenty-nine (29) days."

In the light most favorable to the State, the proof adduced at the trial revealed that after the deputies stopped the Appellant for speeding, they approached her vehicle and smelled a strong odor of burned marijuana. They asked the Appellant to provide her driver's license, registration, and proof of insurance; however, she was "sleepy and confused" and had to be reminded to keep looking for the documents. The deputies asked her to perform field sobriety tests, which they opined she failed. The deputies stated that the Appellant could not operate a vehicle safely. The video of the stop supports the deputies' testimony. The testing of the Appellant's blood revealed a minimal blood alcohol concentration and the presence of numerous drugs with sedative effects. Additionally, the State adduced a certified copy of the Appellant's 2009 conviction of DUI. We conclude that the foregoing evidence was sufficient to sustain the Appellant's conviction of DUI, second offense. See State v. Ralph, 347 S.W.3d 710, 716 (Tenn. Crim. App. 2010) (citing State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993)) (stating "that in DUI cases, a police officer's testimony, by itself, is sufficient evidence to convict a defendant of driving under the influence").

## C. Evidentiary Issues

On appeal, the Appellant raises several challenges to the admissibility of evidence. Initially, we note that our supreme court has stated that generally "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this [c]ourt will not interfere in the absence of abuse appearing on the face of the record." State v. Pylant, 263 S.W.3d 854, 870 (Tenn. 2008) (citing State v. Dotson, 254 S.W.3d 378, 392 (Tenn. 2008); State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993); State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992)). The trial court's discretion in determining the admissibility of evidence is generally circumscribed by the Tennessee Rules of Evidence. Our supreme court has held specifically regarding hearsay evidence that a trial court's factual findings and credibility determinations regarding hearsay are binding upon this court unless the evidence preponderates against them. Kendrick v. State, 454 S.W.3d 450, 479 (Tenn. 2015). However, the determination of whether the statement in question is hearsay and whether a hearsay exception applies are questions of law that we review de novo. Id.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401; see also State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999). Tennessee Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible except as [otherwise] provided. . . . Evidence which is not relevant is not admissible." However, even relevant evidence

"may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. It is within the trial court's discretion to determine whether the proffered evidence is relevant; thus, we will not overturn the trial court's decision absent an abuse of discretion. See State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

## 1. Prescription Records

The Appellant contends that the trial court erred by not allowing her to introduce her pharmacy records to establish that she had prescriptions for all of the drugs, except marijuana, found in her blood. The statement of the evidence reflects that when the Appellant attempted to introduce the pharmacy records, the State objected; however, the statement of the evidence does not clearly reflect the nature of the objection. Instead, the statement of the evidence reflects that the trial court sustained the objection

> due to the fact that the State never argued that [the Appellant] did not have a valid prescription for any of the drugs in her system except for the marijuana and the [Appellant] had already testified she had valid prescriptions, the length of time she's been on them, the amount she takes, that she had built up a tolerance to the medication, and that she felt like they did not impair her. [The trial court] also sustained the objection due to the fact a foundation was never laid.

The Appellant argues that she properly authenticated the pharmacy records by providing affidavits from the custodians of the pharmacy records pursuant to Tennessee Rule of Evidence 803(6), which is the hearsay exception related to records of regularly conducted activity, and Rule 902(11), which is the self-authentication rule relating to certified records of regularly conducted activity. However, the certified statement of the evidence, upon which we must rely, is simply not adequate for this court to determine that the trial court erred. Therefore, without further proof, we are unable to say that the trial court abused its discretion by finding the Appellant failed to lay the proper foundation for the admission of the pharmacy records. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

## 2. Evidence Regarding Back Surgeries

The Appellant contends that the trial court erred by refusing to allow her to introduce evidence pertaining to her back surgeries, namely her medical records and physical evidence consisting of the screws and rods taken from her back. The trial court sustained the State's objection that the records regarding her treatment for her back

injuries were not relevant and noted that the Appellant had testified regarding her treatment. Regarding the rods and screws, the trial court sustained the State's objection based on hearsay and "chain of custody because there was no doctor to say those were taken from her back."

On appeal, the Appellant asserts that the medical records were authenticated properly pursuant to Tennessee Rules of Evidence 803(6) and 902(11) and were admissible. However, the statement of the evidence does not reflect that the Appellant made this argument in the trial court. Therefore, without further proof, we are unable to say that the trial court erred.

### 3. Hand-Drawn Chart

The Appellant contends the trial court erred by refusing to allow defense counsel to use a chart he made to show "the therapeutic levels . . . of each drug" in the Appellant's blood as an exhibit during his opening statement and closing argument. The trial court sustained the State's objection "because Defense Counsel never questioned the State's expert on the chart neither did he question his own expert." The State, citing Tennessee Rule of Evidence 103(a)(2), argues that the Appellant waived this issue by failing to make an offer of proof. We note that the statement of the evidence reflects that defense counsel attempted to introduce the chart during his direct examination of the Appellant, not during opening statement or closing argument. Again, we must rely on the statement of evidence. Therefore, the issue is waived. See Tenn. R. App. P. 36(a); State v. Paul Jerome Johnson, No. E2013-02437-CCA-R3-CD, 2015 WL 1579873, at *9 (Tenn. Crim. App. at Knoxville, Apr. 6, 2015).

### 4. Still Photographs from Body Camera Video

The Appellant contends that the trial court erred by allowing the State to introduce two still photographs taken from the video of the traffic stop. The statement of the evidence reflects that during Deputy Moody's testimony, the State submitted a copy of the video of the traffic stop recorded by Deputy Moody's body camera. The statement of the evidence does not reflect that the Appellant objected to the video. Later in the deputy's direct examination, the State attempted to "introduce[] a still photo taken from [Deputy Moody's] body cam[era] that showed [the Appellant] not worried about the traffic." The State subsequently offered into evidence a photograph of the Appellant "asleep in the back of the patrol car." The Appellant objected to each of the photographs based on the best evidence rule. The trial court overruled both objections, holding that the photographs were relevant and that the "prejudicial value did not outweigh the probative value."

On appeal, the Appellant contends that the photographs violate Tennessee Rules of Evidence 403 and 1002. Specifically, she asserts that the photographs are not the "best evidence" under Rule 1002 because they were taken "out of context with the rest of the body cam[era] video and do not show what really occurred during that time frame period." She further asserts that the photographs "substantially mislead the jury and are unfairly prejudicial" under Rule 403. The State responds that the trial court correctly admitted the photographs.

The statement of the evidence reflects that at trial, the Appellant's objections to the photographs were based solely on the best evidence rule. Generally, a party is bound by the evidentiary theory argued to the trial court and may not change or add theories on appeal. See State v. Banes, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993). Therefore, "a defendant may not object to the introduction of evidence on one ground, abandon this ground, and assert a new basis or ground for the objection in this [c]ourt." State v. Aucoin, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988). Accordingly, we conclude that the Appellant has waived the issue regarding the prejudicial effect of the photographs under Rule 403. See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (stating that this court is not required to address issues raised for the first time on appeal).

Tennessee Rule of Evidence 1002, also known as the best evidence rule, generally provides that in order to prove "the content of a writing, recording, or photograph, the original writing, recording or photograph is required." Generally, "[t]he best evidence rule is a rule of preference rather than exclusion. It does not exclude evidence but rather requires the introduction of the best available form of the evidence." Iloube v. Cain, 397 S.W.3d 597, 602 (Tenn. Ct. App. 2012) (citations and internal quotation marks omitted). Regardless, Tennessee Rule of Evidence 1003 provides that "[a] duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original." Tennessee Rule of Evidence 1001(4) defines a "'duplicate' [a]s a copy produced . . . by means of photography . . . or by other equivalent techniques which accurately reproduce the original." The record before us does not reflect that the Appellant questioned the authenticity of the original video recording or the authenticity of the photographs. The Appellant's complaints about the photographs being taken out of context do not relate to their admissibility and instead concern the weight to be attributed to the photographs. We conclude that the trial court did not abuse its discretion by allowing the State to admit the photographs. See State v. Mickens, 123 S.W.3d 355, 376 (Tenn. Crim. App. 2003); State v. Darrell Wayne Bumpas, No. M2017-00746-CCA-R3-CD, 2018 WL 817289, at *6 (Tenn. Crim. App. at Nashville, Feb. 12, 2018); State v. James Timothy Taylor, No. M2005-01878-CCA-R3-CD, 2006 WL 2563431, at *4 (Tenn. Crim. App. at Nashville, Aug. 25, 2006).

D. Sentencing

On appeal, the Appellant raises several issues concerning sentencing. This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing); State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in her own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the Appellant to demonstrate the impropriety of her sentence(s). See Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

At the sentencing hearing, the State submitted the Appellant's presentence report, which reflected the Appellant had prior convictions of reckless driving and possession of drug paraphernalia as well as numerous speeding citations.

Jennifer Grisham, a courtroom security officer employed by the Henderson County Sheriff's Department, testified that immediately after the jury returned the verdicts against the Appellant, the trial court ordered the Appellant to be taken into custody because she refused to submit to a drug test. While Officer Grisham was escorting the Appellant to the holding cell, the Appellant "jerked" away and "hesitated" to come with the officer. When they arrived at the booking area, the Appellant told another officer, "'Now I've got her name. I'll find out if she's got kids.'" Officer Grisham interpreted the comment as a threat.

Officer Grisham noted that the Appellant told the trial court that she did not have her driver's license with her; however, when Officer Grisham searched the Appellant's purse, she found the Appellant's driver's license and a bottle containing pills of multiple colors, shapes, and sizes. On cross-examination, Officer Grisham stated that she never checked to see if the Appellant had prescriptions for the pills found in her purse.

Tracy Grisham, the "CID Captain" of the Henderson County Sheriff's Department, testified that Officer Grisham gave her the bottle of pills she confiscated from the Appellant's purse. The prescription label on the bottle was for .5 milligram clonazepam pills. Captain Grisham identified the pills inside the bottle by using the "Online Drug Identification Bible." The bottle contained seven ibuprofen pills, which

Captain Grisham acknowledged was not a controlled substance. The bottle also contained eight 10 milligram amphetamine pills, one 15 milligram amphetamine pill, eleven 1 milligram clonazepam pills, and fifteen 10 milligram oxycodone pills. Based upon the pills found in the Appellant's purse, Captain Grisham filed a warrant charging the Appellant with possession of Schedule IV controlled substances and possession of Schedule II controlled substances.

On cross-examination, Captain Grisham stated that she was never told that the pills were prescribed to the Appellant and were to be given to the nurse at the jail so they could be given to the Appellant during her incarceration. Captain Grisham did not know whether the Appellant was ever given any of her medications while in jail.

Deputy Moody testified that based upon his experience, he thought other drivers on Interstate 40 were endangered by the Appellant's driving while impaired. However, he acknowledged on cross-examination that the only "improper driving" he saw the Appellant perform was speeding.

The thirty-four-year-old Appellant testified that she had attended the Nashville School of Law since 2008 and that she took a leave of absence in 2009 when she broke her back. As of fall 2016, she needed only to complete a three-hour constitutional law course in order to graduate. The dean of her school arranged for her to be a "visiting student" at the University of Memphis so she would not have to commute from her home in Memphis to school in Nashville. However, until the arrangements became effective, she continued to drive from Memphis to Nashville twice a week to attend class. The Appellant conceded that she had received several speeding tickets, explaining that as she commuted between Memphis and Nashville, she did not always use the cruise control on her vehicle and that she would "hurry" and "end up speeding" when her back began to hurt.

At the time of her arrest, the Appellant was driving from Nashville to Memphis. She stated that three hours before the traffic stop, she had "less than a full beer" with her dinner at a Chili's restaurant. She asserted that she did not feel under the influence of alcohol while she was driving. She denied smoking marijuana that day but acknowledged that she had taken her prescription pain medication.

The Appellant explained the incident during which her back was broken. She stated that around 5:00 a.m. on March 27, 2009, she was driving westbound on Interstate 40. When she began passing an "18 wheeler" on the left side, the truck drifted into her lane, and she hit the truck. After getting out of her vehicle, she was struck by another vehicle and dragged into a drainage ditch. She was "life flighted to Vanderbilt" where she was diagnosed with "compression fractures of three thoracic vertebra, T9, T10[,] and T11." Doctors surgically placed "two metal rods and eight pedicle screws in [her] back."

Three months before the instant arrest, she had the rods and screws removed from her back because she "couldn't take" the pain anymore. The Appellant acknowledged that she had been drinking and was under the influence at the time of the 2009 accident but asserted that she did not cause the wreck. Nevertheless, she pled guilty to DUI as a result of the accident.

In April or May 2009, the Appellant was prescribed hydrocodone and was given fentanyl patches because of pain from the accident. She asserted, "I've been on them so long that I've developed a tolerance to [the] side effects and anything like that. There was no problem driving. There is no danger taken." She maintained that her tolerance for the hydrocodone rendered it ineffective for pain management; therefore, her doctor prescribed oxycodone. She had been taking the oxycodone "for years." She stated that "they didn't cause any impairment when driving or anything else."

The Appellant said that she took Adderall for attention deficit hyperactivity disorder (ADHD), which caused her to have difficulty concentrating, focusing, remembering, and completing tasks.

On cross-examination, the Appellant acknowledged that "it is best to stay away from" marijuana because "it has gotten [her] into a lot of trouble." She maintained, however, that "one of the deputies did unfortunately not tell the truth about what he found in my car." She conceded that she lied to Deputy Moody when he asked if she had marijuana in the vehicle. She said that she knew if she was truthful, Detective Moody would have probable cause to search her vehicle.

On redirect examination, the Appellant said that she smoked marijuana for medicinal, not recreational, purposes. She explained that a doctor in California wrote a recommendation so she could try marijuana as a pain medication. She said that the marijuana was effective in "interfer[ing] with the pain signals" but that "it's not worth all of this."

Upon questioning by the trial court, the Appellant conceded that she had a problem with speeding. She acknowledged that when she pled guilty to DUI after her 2009 accident, she also pled guilty to possession of marijuana. She said she had not been smoking marijuana on the morning of the accident but that she had marijuana in her car.

The Appellant conceded that marijuana was not legal in Tennessee but again noted the recommendation from a doctor in California. The trial court observed that the Appellant possessed marijuana in 2009 before the accident that caused her pain. The Appellant explained that she thought "since [marijuana] was legal in another state that eventually that it was okay and that it would be legal here, but now I see it's not." The Appellant asserted that she did not have a problem with marijuana or prescription

medication.

Regarding sentencing, the trial court stated that the proof belied the Appellant's claim that she had no intent to violate the law, noting that she did not dispute she was driving 84 mph in a 70 mph zone. Additionally, she had marijuana and a marijuana pipe in her vehicle. Further, she had multiple bottles of beer in her car, which demonstrated "an intent to possess alcohol o[n] that occasion." The trial court noted that the Appellant lied to the deputies about the alcohol and drugs in her vehicle. The trial court stated that the Appellant was not truthful at trial and had not accepted responsibility for her actions.

The trial court noted that after the Appellant's first DUI conviction in 2009, she received a sentence of eleven months and twenty-nine days, which was suspended after she served 48 hours in confinement. She was also ordered to undergo an alcohol and drug evaluation and counseling but nevertheless continued to use drugs and alcohol.

The trial court further noted that the Appellant had a "fairly extensive" criminal history, including her prior convictions of DUI and possession of marijuana. The court stated that the Appellant acknowledged she was under the influence at the time of the 2009 accident, but she refused to take any responsibility for the accident. Additionally, the Appellant had a reckless driving conviction and numerous speeding citations, including three speeding citations she received while on bond for the instant charges. Some of the speeding citations reflect that the Appellant was driving at least fifteen or twenty mph over the posted speed limit, occasionally at speeds over 100 mph, and that she had been caught on video "weaving in and out of traffic between tractor trailers" on the interstate. The trial court gave great weight to the Appellant's prior criminal history.

Regarding mitigation, the trial court said that the Appellant was very intelligent and had been attending law school. The court was concerned about the Appellant's use of marijuana despite knowing that it was illegal in Tennessee. The court was also concerned that the Appellant did not think she had a problem with drugs.

The trial court sentenced the Appellant to eleven months and twenty-nine days for each Class A misdemeanor DUI conviction and merged the convictions. The court also imposed a sentence of eleven months and twenty-nine days for the Class A misdemeanor convictions of possession of marijuana and possession of drug paraphernalia. The court stated that for each Class A misdemeanor conviction, the Appellant was eligible for release after serving seventy-five percent of the sentence. The trial court approved the fines set by the jury, which were $3,500 for the conviction of DUI, second offense, and $2,500 for each conviction of possession of marijuana and possession of drug paraphernalia. The trial court ordered the Appellant to pay a $50 fine and serve thirty days for her conviction of violating the open container law and for her conviction of speeding.

The trial court found that the Appellant's record of criminal activity was extensive and that consecutive sentencing was appropriate. The court ordered the sentence for the DUI conviction to be served consecutively to the remaining counts, which were to be served concurrently, so that "[b]asically she'll have two consecutive 11 months and 29 day sentences to serve."

Regarding alternative sentencing, the trial court again noted the Appellant's long history of speeding and drug use. The court said that the Appellant had "some" rehabilitative potential but again noted that she was not very truthful and was unwilling to accept responsibility for her actions. The court ordered the Appellant to serve 120 days in confinement for each Class A misdemeanor conviction, explaining that "these sentences are consecutive. It will be a total of 240 days [day for day] that she'll be ordered to serve in our local county jail." Afterward, the court agreed to "release her to go into some type of treatment program if that's what she chooses to do."

## 1. Dismissed Charge

First, the Appellant contends that although the true bill listed a charge of speeding, the indictment did not contain a count charging her with speeding. Nevertheless, the jury was instructed on the charge of speeding and found her guilty. In its written response to the motion for new trial, the State conceded that the Appellant was not indicted for that offense. Although the judgment of conviction reflects that the speeding charge was dismissed, the judgment further reflects that a sentence of thirty days was imposed. On appeal, the State agrees with the Appellant that the case should be remanded to the trial court for entry of a corrected judgment reflecting that the speeding charge was dismissed and that no sentence was imposed. We agree.

## 2. Length of Sentences

The Appellant next contends that the length of her sentences was excessive, arguing that the trial court failed to consider a number of mitigating factors. In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted,

as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343 (quoting Tenn. Code Ann. § 40-35-210(d)). Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. Moreover, in misdemeanor sentencing, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). Thus, the trial court is afforded considerable latitude in misdemeanor sentencing. See State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999).

The Appellant contends that the trial court failed to consider that

> (1) The [Appellant's] criminal conduct neither caused nor threatened serious bodily injury;
>
> . . . .
> (3) Substantial grounds exist tending to excuse or justify the [Appellant's] criminal conduct, though failing to establish a defense;
>
> . . . .
> (8) The [Appellant] was suffering from a mental or physical condition that significantly reduced the [Appellant's] culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor;
>
> . . . .
> (11) The [Appellant], although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct;
>
> . . . .

- 24 -

(13) Any other factor consistent with the purposes of this chapter.

Tenn. Code Ann. § 40-35-113(1), (3), (8), (11), and (13).

However, the record reveals that trial court considered the mitigating factors and found that none were applicable to the Appellant. This court has explained that although a defendant may "argue[] that the trial court failed to properly consider the mitigating factors, we note that the statutory enhancement and mitigating factors are advisory only and that a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." State v. Dominique Davon Holmes, No. W2013-01878-CCA-R3-CD, 2014 WL 4384991, at *7 (Tenn. Crim. App. at Jackson, Sept. 5, 2014) (internal quotation marks omitted) (citing Tenn. Code Ann. § 40-35-114(c)(2); Carter, 254 S.W.3d at 345; Bise, 380 S.W.3d at 706). We conclude the trial court did not abuse its discretion by imposing the maximum sentences for each of the Class A misdemeanor convictions.

The Appellant and the State agree that the trial court erred by imposing a sentence of thirty days for the Appellant's conviction of violating the open container law. We agree. Tennessee Code Annotated section 55-10-416(b)(1) provides that a violation of the open container law "is a Class C misdemeanor, punishable by fine only." Accordingly, we must vacate the imposition of the thirty-day sentence and remand for correction of the judgment of conviction to reflect that the punishment is limited to a $50 fine. See State v. Bobby J. Young, No. M1998-00402-CCA-R3-CD, 1999 WL 1179574, at *9 (Tenn. Crim. App. at Nashville, Dec. 15, 1999).

2. Consecutive Sentencing

The Appellant next contends that the trial court erred by imposing consecutive sentencing. Tennessee Code Annotated section 40-35-115(b) contains the discretionary criteria for imposing consecutive sentencing. See also State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995). Because the criteria for determining consecutive sentencing "are stated in the alternative[,] . . . only one need exist to support the appropriateness of consecutive sentencing." State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003).

The trial court imposed consecutive sentencing based upon the Appellant's extensive criminal history. Tenn. Code Ann. § 40-35-115(b)(2). The Appellant argues that she has no felony arrests or convictions. However, she acknowledges that she has two Class A misdemeanor convictions, one for DUI and one for possession of marijuana, and one Class B misdemeanor conviction for reckless driving. She further acknowledges

- 25 -

she has had numerous speeding violations in the past eight years but questions whether "traffic infractions" justify the imposition of consecutive sentencing.

The trial court observed that despite being injured in an accident while driving under the influence, the Appellant continued to drive while under the influence of various intoxicants and blatantly disregarded the rules of the road. See State v. Dickson, 413 S.W.3d 735, 748 (Tenn. 2013) (stating that although many of defendant's "convictions did not involve acts of violence and most constituted driving offenses, they indicate a consistent pattern of operating outside the confines of lawful behavior"). We conclude that the trial court did not abuse its discretion by imposing consecutive sentencing on the basis of the Appellant's extensive criminal history.

The Appellant next argues that the trial court erred by finding that consecutive sentencing was necessary to protect the public from further criminal conduct by the Appellant. However, as we stated earlier, the trial court imposed consecutive sentencing based upon the Appellant's extensive criminal history, not upon a finding that she was a dangerous offender. Accordingly, the trial court was not required to make any additional findings before imposing consecutive sentencing. State v. Nelson, 275 S.W.3d 851, 870 (Tenn. Crim. App. 2008).

### 3. Fines

The Appellant argues that the trial court should not have imposed the maximum fines allowed under the statutes, arguing again that the Appellant was not drinking alcohol to excess, was using marijuana only for pain management, and was using pain medication as prescribed.

A fine imposed on a defendant following conviction is a part of the defendant's sentence. State v. Bryant, 805 S.W.2d 762, 765, (Tenn. 1991); see Tenn. Code Ann. § 40-35-104(c)(1). As such, this court will review a trial court's imposition of a fine under an abuse of discretion standard. See Bise, 380 S.W.3d at 707; State v. Dewayne Jones, No. W2016-00074-CCA-R3-CD, 2017 WL 2998900, at *7 (Tenn. Crim. App. at Jackson, July 14, 2017), perm. to appeal denied, (Tenn. Oct. 6, 2017). "The trial court's imposition of a fine, within the limits set by the jury, is to be based upon the factors provided by the 1989 Sentencing Act, which include 'the defendant's ability to pay that fine, and other factors of judgment involved in setting the total sentence.'" State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993) (quoting Bryant, 805 S.W.2d at 766).

We note that the maximum fine the jury could have imposed for the DUI, second offense conviction was $3,500; the maximum fine for the possession of marijuana and the possession of drug paraphernalia convictions was $2,500; and the maximum fine for

violating the open container law was $50. See Tenn. Code Ann. §§ 55-10-403(a)(2) (fine for DUI, second offense); 40-35-111(e)(1) (fine for Class A misdemeanors except otherwise provided by statute); 40-35-111(e)(3) (fine for Class C misdemeanors). The jury imposed the statutory maximum fines for each offense.

The Appellant did not object to or argue against the fines imposed by the jury at the sentencing hearing. See Jones, No. W2016-00074-CCA-R3-CD, 2017 WL 2998900, at *7. At the motion for new trial hearing, defense counsel acknowledged that the Appellant had the ability to pay the fines but argued for a reduction of the fines because the Appellant did not act "willfully," had been taking her medications as prescribed, and had a minimal amount of marijuana and drug paraphernalia in her possession. The trial court responded that the jury heard the facts of the case and apparently "felt pretty strongly about her guilt." The court reiterated that the Appellant had at least twelve speeding convictions, that she used marijuana even though she knew it was illegal in Tennessee, and that she was not "a truthful person at all." This issue has no merit.

### E.  Bond

As her final issue, the Appellant contends that the trial court erred by (1) revoking her bond after the jury returned its verdict and (2) by failing to grant her bail pending appeal. The record reveals that the Appellant was granted bond prior to trial. However, after she was convicted of DUI, second offense, she was not truthful about her driver's license and refused to take a drug screen. The trial court revoked her bond, and she was taken into custody. At that point, an officer searched the Appellant's purse and found the Appellant's driver's license and a pill bottle containing a number of different kinds of pills.

Later, on January 19, 2017, the trial court issued an order releasing the Appellant on her own recognizance pending appeal. The Appellant's release was contingent upon a number of special conditions. On March 2, 2017, following an evidentiary hearing, the trial court issued an order "revoking and/or cancelling" the appeal bond because of the Appellant's failure to comply with the special conditions of release. Among other violations, the trial court noted that the Appellant tested positive for alcohol, cocaine, amphetamine, and oxycodone. Additionally, the Appellant failed to appear for a drug screen.

The Appellant argues that the trial court failed to follow Tennessee Rule of Criminal Procedure 32(d)(1), which provides that "[a] person convicted of a misdemeanor has a right to have bail set or to be released on recognizance pending the exhaustion of all direct appellate procedures in the case." The record clearly reflects that the trial court complied with Rule 32(d)(1) and released the Appellant on her own

recognizance pending appeal; however, because of her failure to comply with the terms of release, her bail was revoked.

Next, the State argues that the Appellant's claims regarding the revocation of her bond are not subject to review pursuant to Tennessee Rule of Appellate Procedure 3(b). We agree that an appeal of the revocation of an appellate bond is not among the factors listed by the rule.

Instead, this issue is governed by Rule 8 of the Tennessee Rules of Appellate Procedure. Rule 8(a) provides, in pertinent part:

> Before or after conviction the prosecution or defendant may obtain review of an order entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals granting, denying, setting or altering conditions of defendant's release. . . .
>
> Review may be had at any time before an appeal of any conviction by filing a motion for review in the Court of Criminal Appeals or, if an appeal is pending, by filing a motion for review in the appellate court to which the appeal has been taken. . . .

Tenn. R. App. P. 8(a); see State v. Moore, 262 S.W.3d 767, 771 (Tenn. Crim. App. 2008). This court has explained that "[n]ot only is Rule 8 designed to expedite review of release orders, but our supreme court has said that it also is the 'only effective remedy' for 'addressing unsatisfactory release orders. . . .'" State v. Melvin J. Branham, No. E2013-00638-CCA-R3-CD, 2014 WL 869552, at *6 (Tenn. Crim. App. at Knoxville, Mar. 4, 2014) (quoting State v. Melson, 638 S.W.2d 342, 358 (Tenn. 1982)). Accordingly, the proper method to review the trial court's orders revoking the Appellant's bond or declining to reinstate her bond was by filing a motion for review in this court pursuant to Rule 8. Id. (citing Tenn. R. App. P. 8; Moore, 262 S.W.3d at 771). The Appellant "failed to follow the proper procedure for filing a Rule 8 appeal, and we decline to treat this appeal as such." Id. Thus, this issue is waived.[3] State v. Cedric Jones, No. M2015-00720-CCA-R3-CD, 2016 WL 3621513, at *7 (Tenn. Crim. App. at Nashville, June 29, 2016), perm. to appeal denied, (Tenn. Sept. 22, 2016).

---

[3] We note that after filing her appellate brief, the Appellant filed a motion in this court to review the trial court's decision to revoke her appearance bond pending appeal. This court concluded that the trial court erred in revoking the Appellant's appearance bond and remanded the matter to the trial court for further consideration. Thereafter, the Appellant was again granted bond, which the trial court later revoked for failure to comply with the special conditions of release. The Appellant again filed a motion in this court seeking a new bond or release from custody, which was denied.

- 28 -

### III.  Conclusion

In sum, we conclude that the trial court erred by imposing a thirty-day sentence for the conviction of violating the open container law; accordingly, the case must be remanded for correction of the judgment of conviction to reflect the punishment for that offense is a $50 fine.  Additionally, on remand the judgment of conviction for speeding should be vacated and dismissed.  The judgments of the trial court are affirmed in all other respects.

_____
NORMA MCGEE OGLE, JUDGE